Mary Frances FEW et vir, Petitioners,

v.

The CHARTER OAK FIRE INSURANCE
COMPANY, Respondent.

No. B–2276.

Supreme Court of Texas.

Jan. 27, 1971.

Smith, Johnson & McDowell, William
McDowell, Sulphur Springs, Woodrow H.
Edwards, Mount Vernon, for petitioners.

Ramey, Brelsford, Flock, Devereux & Hutchins, Donald Carroll and Mike Hatchell, Tyler, for respondent.

POPE, Justice.

Mary Frances Few, joining her husband pro forma, sued Charter Oak Fire Insurance Company for total and permanent incapacity suffered in the course of her employment with Safeway Grocery in Mineola, Texas. The trial court awarded judgment for the plaintiffs, naming both Mary Frances and her husband in the judgment. The court of civil appeals, with a divided court, reversed the judgment for plaintiffs and remanded the cause for re-trial, holding that the husband was an indispensable party and that he was not joined as a real party. That court held also that the trial court erred in awarding plaintiffs damages for certain medical services furnished Mary Frances Few by her private physician when there was no proof that the insurer failed, refused, or neglected to furnish necessary medical services. 456 S.W. 2d 156. It is our opinion that the court incorrectly decided the first of these issues but correctly decided the other. The judgment of the court of civil appeals is reversed and judgment is here rendered modifying the trial court's judgment and, as modified, affirming that judgment.

Plaintiff says that we should reverse the judgment of the court of civil appeals because (1) the husband was not an indispensable party under the recently enacted Articles 4621 and 4626,[1] (2) the defendant waived any defect in parties by failing to object to the non-joinder, and (3) her husband was actually made a real party. The first reason stated above is a correct one, so we need not discuss the other two.

■ Mary Frances Few and her husband, Milburn Few, had been married for many years prior to her accident on June 20, 1968, and they are still married. For this reason her workmen's compensation award was their community property. Pickens v. Pickens, 125 Tex. 410, 83 S.W. 2d 951, 953 (1935). Community ownership may also be called a joint ownership. Dillard v. Dillard, 341 S.W.2d 668 (Tex.Civ. App.1961, writ ref. n. r. e.); Hitchcock v. Cassel, 275 S.W.2d 205 (Tex.Civ.App. 1955, writ ref. n. r. e.). Rule 39, Texas Rules of Civil Procedure, as it was worded at the time of the trial,[2] provided that persons having a joint interest shall be made parties. It was this rule which prompted the court of civil appeals to hold that the wife's husband was an indispensable party. The court relied upon our recent opinion in Petroleum Anchor Equipment Co., Inc. v. Tyra, 406 S.W.2d 891, 892–893 (Tex.1966), in which we applied Rule 39. In that case we held that persons who hold a joint interest shall or must be made parties and are indispensable parties.

■ If only Rule 39 were involved in the case before us, our decision would be controlled by our earlier decision in Petroleum Anchor. However, we are now faced with two relevant statutes enacted by the legislature. Article V, Sec. 25, of the Texas Constitution, Vernon's Ann.St. vests in the Supreme Court the power to establish rules of procedure "not inconsistent with the law of the State." Legislative authority for this power is found in Article 1731a, Sec. 2. Rule 39 was established pursuant to this power. As the constitutional provision indicates, this is a limited power; and when a rule of the court conflicts with a legislative enactment, the rule must yield. Missouri, K. & T. R. Co. v. Beasley, 106 Tex. 160, 155 S.W. 183 (1913), rehearing denied, 106 Tex. 160, 160 S.W. 471.

Articles 4621 and 4626 are the statutes which control this case. Enacted by the

---

1. All Statutory references are to Vernon's Texas Civil Statutes. Articles 4621 and 4626 were carried forward into the Family Code by the 61st Legislature as Articles 5.22 and 4.04 respectively.

2. The rule was changed, effective January 1, 1971.

60th Legislature and effective January 1, 1968, they provided:

> Art. 4621. * * * During marriage each spouse shall have sole management, control and disposition of that community property which he or she would have owned if a single person, including (but not limited to) his or her personal earnings, the revenues from his or her separate property, the recoveries for personal injuries awarded to him or her, and the increase, mutations and revenues of all property subject to his or her sole management, control and disposition; the earnings of an unemancipated minor are subject to the management, control and disposition of the parents or parent having custody of the minor; if community property subject to the sole management, control and disposition of one spouse is mixed or combined with community property subject to the sole management, control and disposition of the other spouse, the mixed or combined community property is subject to the joint management, control and disposition of the spouses unless the spouses otherwise provide; any other community property is subject to the joint management, control, and disposition of the husband and wife.

> Art. 4626. * * * "A spouse may sue and be sued without the joinder of the other spouse. When claims or liabilities are joint and several, the spouses may be joined under the rules relating to joinder of parties generally."

Articles 4621 and 4626 were designed to correct an anomalous situation concerning the rights of a Texas wife. Almost from the beginning of Texas history, the right of a wife to own property has been recognized, but it has taken more than a century to give the wife managerial powers over that which she owns.

The Constitution of 1836 recognized the community property system of Mexico and Spain and on January 20, 1840, the Fourth Congress of the Republic determined to follow that system in matters of marital property. 2 Gammel Laws of Texas 177–178 (1840). The system has proved to be much fairer in its recognition of the wife's rights of ownership than that afforded her by the common law. 1 de Funiak, Principles of Community Property, Sec. 3 (1943).

The common law had visited upon a wife an intolerable state of civil disability both in owning and managing property. As expressed by Vaughn, that system "suspended the wife's legal existence during the marriage, or at least consolidated it into that of the husband." Vaughn, The Policy of Community Property and Inter-Spousal Transactions, 19 Bay.L.Rev. 20, 48–49 (1967). At common law, the husband and wife were one, and the husband was that one. Murphy v. Coffey, 33 Tex. 508 (1870). The woman's legal existence, according to Blackstone, was merged into that of her husband, "under whose wing, protection, and cover, she performs everything; and is therefore called in our law-French, a feme covert, and is said to be under the protection and influence of her husband, her baron, or lord, and her condition during her marriage is called her coverture. * * * If the wife be injured in her person or her property, she can bring no action for redress without her husband's concurrence, and in his name, as well as her own. * * * *" Erlich's Blackstone, pp. 83, 84 (1959).

The Republic treated the wife's right to manage her property differently from her right to own that property. The same act of the Fourth Congress which recognized the community property system of ownership, took from the wife any powers to manage what she owned and gave the sole management of the wife's property to the husband. 2 Gammel, Laws of Texas 178 (1840). It has been the law of Texas for more than a century that, except in limited situations, only the husband could bring suit for community recoveries arising out of a wife's loss of earning capacity. Roberts v. Magnolia Petroleum Co., 142 S.W.2d 315 (Tex.Civ.

App.1940, writ ref., [135 Tex. 289, 143 S.W.2d 79]); Loper v. Western U. Teleg. Co., 70 Tex. 689, 8 S.W. 600 (1888); Gallagher v. Bowie, 66 Tex. 265, 17 S.W. 407 (1886); Ezell v. Dodson, 60 Tex. 331 (1883); Murphy v. Coffey, supra; Firence Footwear Co. v. Campbell, 406 S.W.2d 516, 411 S.W.2d 636 (Tex.Civ.App.1967, writ ref. n. r. e.); Urban v. Field, 137 S.W.2d 137 (Tex.Civ.App.1940, no writ).

Seventy years ago Judge Ocie Speer deplored the situation which recognized the wife's equality of ownership, yet denied that equality with respect to a wife's management of what she owned. He wrote:

> The foolish fiction that her existence is merged in that of her husband has given way to the more enlightened recognition of her identity as an individual, and her consequent capacity to own property, to make contracts, and to sue and be sued. Yet, as though fearing serious consequences of much moment, it has not altogether removed her fetters, but is slowly, yet surely, tending, through the course of legislative acts and judicial interpretations, toward the enlargement of her rights and powers, which will in time culminate in a proper recognition of all her civil rights. Speer, The Law of Married Women in Texas, Sec. 25 (1901).

Efforts to rectify the wife's inferior legal powers as the manager of her property have been infrequent; and over-broad corrective legislation changing the definition of community property has been stricken down on constitutional grounds. See Huie, Sec. 11, Commentary-Community Property Law, 13 Vernon's Tex.Stats., p. 39; Northern Texas Traction Co. v. Hill, 297 S.W. 778 (Tex.Civ.App.1927, writ ref.).

The disabilities of coverture remained as a remnant of the common law until 1967. During the intervening years, the wife in fact was still covert; her husband was still lord and baron. The 60th Legislature, in enacting Articles 4621 and 4626, avoided the constitutional difficulties arising from an attempt to modify legislatively the constitutional definition of community property. These statutes leave undisturbed the definition of community property, but more clearly define the managerial rights of each spouse. Article 4621 gave the injured spouse powers to manage that community which she would have owned if a single person, including recoveries for personal injuries. Article 4626 authorized the wife to sue without joining her husband, but it also provided that in the case of joint and several claims, the spouses "may be joined under the rules relating to joinder of parties generally."

■ Charter Oak argues that Rule 39(a) is the rule of joinder to which Article 4626 referred in its phrase "under the rules relating to the joinder of parties generally." However, the statute, unlike Rule 39(a) is permissive in terms. It is our opinion that the legislature, in using permissive terms, was recognizing that while the spouses' ownership interest in certain property may be joint, the managerial interest in the same property could be several. The legislature surely did not intend by the use of the phrase "may be joined" in Article 4626 to take away the sole managerial authority which it had just established in Article 4621. In terms of the facts presently before us, Mr. Few would be a proper party to the suit because of his ownership interest in the workmen's compensation benefit. However, he was not an indispensable party in view of his wife's sole managerial interest in the benefit. See, 23 Sw.L.J. 55 (1969); 22 Sw.L.J. 132 (1968). We hold that Mary Frances Few properly sued without joining her husband for the recovery of workmen's compensation benefits arising out of her own injury.

The court of civil appeals cited and relied upon its earlier decision in General Insurance Company of America v. Casper, 426 S.W.2d 606 (Tex.Civ.App.1968, writ ref. n. r. e.). In a per curiam opinion we held that the court of civil appeals correctly reversed the judgment of the trial court on the grounds that there was no

joinder of the plaintiff's husband in a suit to recover workmen's compensation benefits. See, 431 S.W.2d 311. We held, however, that the case did not present a question of fundamental error as stated by the court of civil appeals, since the error was preserved in the trial court. That case arose under Articles 4621 and 4626 as enacted by the 58th Legislature in 1963. Those earlier statutes were unlike those we have in this case and they did not give the wife sole management over her community.

 The trial court also rendered judgment against Charter Oak for $808 medical services which plaintiff received from Doctors Thomas and Jones. Charter Oak was furnishing plaintiff with a physician and medical services when the plaintiff, without notice to the insurer, changed doctors. When the insurer learned that she was using doctors other than the one whom they had provided, it informed plaintiff that the treatment was unauthorized and asked that she return to the physician they had provided.

Section 7, Article 8306, Vernon's Tex.Civ.Stats., provides that an employee will not be entitled to recover any amount expended or incurred by him for medical aid "unless the association or subscriber shall have had notice of the injury and shall have refused, failed or neglected to furnish [medical services] within a reasonable time. * * *" There is no evidence that Charter Oak refused, failed, or neglected to furnish medical services as required by Section 7, Article 8306. We hold that the insurer is not liable for the services rendered by Dr. Jones, and the trial court should not have allowed recovery for the sum paid or owing to him. Charter Oak was liable, however, for the services rendered by Dr. Thomas in the sum of $63 because it made an admission pursuant to Rule 169 that it had paid or agreed to pay that bill. Charter Oak is bound by its admission.

We reverse the judgment of the court of civil appeals, and modify the judgment of the trial court by reducing plaintiffs' recovery by $745. As thus modified, the trial court's judgment is affirmed.